**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-01505-CMA-MJW

THERESA L. KOSAK,

      Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES OF COLORADO,

      Defendant.

---

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

---

This is an employment discrimination lawsuit brought pursuant to the Age

Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), and the Family and

Medical Leave Act, 29 U.S.C.A. § 2615(a)(1) ("FMLA").  Plaintiff also alleges claims for

violation of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C.

§ 201 ("HIPAA"), invasion of privacy, violation of public policy, breach of contract, and

promissory estoppel.  This matter is before the Court on Plaintiff's Motion for Partial

Summary Judgment (Doc. # 31), and Defendant's Motion for Summary Judgment (Doc.

# 33).  Jurisdiction is proper pursuant to 28 U.S.C. 1331 (federal question) and 28

U.S.C. § 1367 (supplemental jurisdiction).  For the reasons stated below, the Court

grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for

Partial Summary Judgment as moot.

# I. BACKGROUND

## A.    FACTS

With respect to Defendant's motion for summary judgment, the Court views the facts in the light most favorable to Plaintiff, the nonmovant.  Thus, reasonable inferences are drawn and factual ambiguities are resolved in her favor.

Defendant Catholic Health Initiatives of Colorado owns and operates hospitals in Colorado, one of which is St. Mary-Corwin Medical Center ("SMC") in Pueblo, Colorado. Plaintiff was a Financial Counselor in the Patient Access Department at SMC and had been employed there for more than 25 years.  (Doc. # 18 at 1-3; Doc. # 33-12 at 1.)

*The Events Leading To Plaintiff's Termination*

On February 1, 2007, Leah Willey ("Willey") became director of the Patient Access Department.  Willey was told by the Chief Financial Officer to take whatever action was necessary to clean up the department and make sure it was running effectively and properly, including terminating employees, if necessary.  (Doc. # 32 at 7; Doc. # 33-8 at 2.)

On February 5, 2007, Willey was approached by a hospital employee regarding Plaintiff.  The hospital employee told Willey that she was going to quit because she was scared of Plaintiff.  The next day, Willey was stopped in the hall by another employee who expressed concern that something had to be done about Plaintiff because the environment in the office was very bad.  (Doc. # 32-25 at 43:13-24, 44:14-20.)

Willey gathered information from current and former employees and doctors. Plaintiff had supervised four employees, and Willey interviewed all of them. Three of the four employees told her they had left their positions because of Plaintiff's behavior. At Willey's request, these three employees put their statements regarding Plaintiff's behavior in writing. In the meantime, other people, including doctors, came forward and informed Willey that they had witnessed Plaintiff's erratic behavior. (Doc. # 33-3; Doc. # 33-4; Doc. # 32 at 10-12; Doc. # 32-25 at 45:9-21.)

Willey took the employees statements and reviewed them with the HR Department, including the HR Director Rudy Krasovec ("Krasovec") and the Corporate HR attorney. Krasovec sat down with Willey and Plaintiff to discuss the allegations. They discussed the complaints of a hostile work environment, threats, and intimidation. Plaintiff, however, was never provided with the specific complaints of the hospital employees, nor did Krasovec or Willey ascertain whether the complaints were in fact true. (Doc. # 32-23 at 77:14-15, 84:17-25, 86:2-4, 77:22-78-4, 80:12-17.)

Willey made the decision to place Plaintiff on administrative leave while an internal investigation was conducted. As part of the investigation, Plaintiff was asked to undergo a "Fit for Duty" evaluation to determine if any psychological issues were the cause of her alleged erratic behavior. (Doc. # 32-25 at 45:2-4; Doc. # 32-13.)

On March 29, 2007, Plaintiff underwent the fit for duty evaluation. Prior to the evaluation, Plaintiff signed an "Authorization to Disclose Protected Health Information"

form which enabled the examining doctor, Dr. Tucker ("Tucker"), to provide the results of his evaluation of Plaintiff to Krasovec.  (Doc. # 32-13 at 1; Doc. # 33-19.)

Plaintiff alleges that shortly after the evaluation, Jackie Armstrong ("Armstrong") of HR told Plaintiff that Krasovec had stated that Plaintiff was crazy.  However, Krasovec did not have the evaluation when he made these statements.  Krasovec was not given the results of Plaintiff's medical evaluation until May 29, 2007.  (Doc. # 33-17; Doc. # 33-18; Doc. # 42-3.)

Ultimately, Willey made the decision to terminate Plaintiff and Krasovec approved.  On April 6, 2007, Plaintiff's employment with Defendant was terminated. At the time of her termination Plaintiff was 49 years old.  It is undisputed that Plaintiff was replaced by a woman of her same age.  (Doc. # 32-25 at 42:18-20; Doc. # 32-21 at 12:17-18; Doc. # 33-13 at 2.)

In Plaintiff's termination letter Krasovec stated, "Following our investigation of various issues regarding your interaction with co-workers and behavior at work, and a fit-for-duty assessment, we have determined that your behavior and how you treat others in the department is unacceptable."  (Doc. # 42-2.)

Plaintiff contends that Willey conducted a "sham investigation."  Plaintiff believes that Willey sought derogatory information only from employees she knew would deliver or "play along," because Defendant made the decision to fire Plaintiff and it was Willey's job to create the grounds for terminating Plaintiff.  (Doc. # 32 at 2, 7, and 8, ¶ 27.)

Willey admits that she never reviewed Plaintiff's prior performance appraisals.  At SMC, all employees receive written yearly performance appraisals.  Plaintiff's yearly appraisals from 2000 to 2006 show that Plaintiff met or exceeded expectations.  (Doc. # 32-25 at 17:19-18:2; Doc. # 32-3.)

Further, Willey admits that she had not personally witnessed any of the allegations in the written statements of the former employees.  In addition, Willey never sought information from Plaintiff's prior directors Tina Eller and Brian Wyatt, both of whom stated that Plaintiff was highly regarded and her department was one of the strongest within the organization.  (Doc. # 32-20 at 2:8 and 3:20.)

*Plaintiff's Request for FMLA Leave*

On March 8, 2007, Plaintiff requested leave pursuant to the Family Medical Leave Act to take care of her elderly father.  Plaintiff delivered her FMLA request to Armstrong in HR.  Plaintiff witnessed Armstrong sign the request.  Plaintiff admits she was permitted to take time off to care for her elderly father.  (Doc. # 32-21 at 25:13-16; Doc. # 33-15 at 28:1-5 and 28:5-10.)

*Plaintiff's HIPAA Complaint*

In 2004, Plaintiff filed an internal complaint that a coworker had violated the Health Insurance Portability and Accountability Act.  The situation was investigated by Plaintiff's supervisor at the time, Tina Betterton, and the Privacy Officer at SMC, Rose Segura.  As a result of this internal investigation, it was determined that the reported incidents did not amount to a HIPAA violation.  (Doc. # 64-2; Doc. # 33-14.)

On October 17, 2007, the U.S. Department of Health and Human Services ("HHS"), Office for Civil Rights ("OCR") received a complaint from Plaintiff alleging that the HIPAA allegation she made against her coworker in 2004 resulted in her termination in 2007.  In a letter dated June 27, 2008, the OCR found that the evidence did not establish a valid claim.  (Doc. # 33-14.)

## B.   PROCEDURAL HISTORY

Plaintiff originally filed this case in state court.  Defendant removed it to this Court on July 16, 2008, after which Plaintiff filed an Amended Complaint on November 19, 2008 (Doc. # 18).

Plaintiff filed a Motion for Partial Summary Judgment on Liability of Her Claim of Age Discrimination on May 15, 2009 (Doc. # 31), Defendant responded on June 19, 2009 (Doc. # 43), and Plaintiff replied July 6, 2009 (Doc. # 49).  Defendant filed a Motion for Summary Judgment on all claims on May 15, 2009 (Doc. # 33), Plaintiff responded on June 19, 2009 (Doc. # 42), and Defendant replied on July 7, 2009 (Doc. # 52).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  F.R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)

(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A fact is "material" if, under the applicable substantive law, it is "essential to the proper

disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that

a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S.

at 248).

The moving party bears the initial burden of demonstrating an absence of a

genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at

670-71. In attempting to meet that standard, a movant that does not bear the ultimate

burden of persuasion at trial need not negate the other party's claim; rather, the movant

need simply point out to the court a lack of evidence for the other party on an essential

element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving

party to "set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n.1 (concerning

shifting burdens on summary judgment). The nonmoving party may not simply rest

upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256. Rather, the

nonmoving party must "set forth specific facts that would be admissible in evidence in

the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*,

144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."  *Celotex*, 477 U.S. at 327 (quoting F.R. Civ. P. 1).

## III.  ANALYSIS

Plaintiff's Amended Complaint contains six claims for relief.  The first three claims involve federal questions.  Specifically, Plaintiff alleges claims for relief under the following federal statutes: (1) Age Discrimination in Employment Act, 29 U.S.C. § 621; (2) Family and Medical Leave Act, 29 U.S.C. § 2601; and (3) the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 201.  The remaining three claims are: (4) Invasion of Privacy, (5) Violation of Public Policy, and (6) Breach of Contract/ Promissory Estoppel.  These are all state law claims over which the court has jurisdiction pursuant to 28 U.S.C. § 1367.

Defendant's Motion for Summary Judgment argues that all six claims should be dismissed.  Plaintiff's response addresses only claims one (1) Age Discrimination and four (4) Invasion of Privacy.  Plaintiff's response contains no argument and cites no authority in opposition to Defendant's Motion to Dismiss the remaining four claims. Plaintiff has apparently conceded that these four claims have no merit: two (2) Violation

of FMLA, three (3) Violation of HIPAA, five (5) Violation of Public Policy, and six (6)
Breach of Contract/Promissory Estoppel.

## A.    FEDERAL CLAIMS

### 1.    Age Discrimination

The Age Discrimination in Employment Act (ADEA) provides a remedy for
discrimination in private employment on the basis of age. *See* 29 U.S.C. § 623(a)(1);
*McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). The Act
requires employers "to evaluate [older] employees . . . on their merits and not their age."
*Id.* It does not, however, require employers to evaluate employees perfectly, fairly, or
even rationally - employers are free to exercise their sound business judgment in
personnel matters and may discipline and terminate at will employees for any reason,
so long as such termination is not unlawful.  *See Adamson v. Multicommunity
Diversified Servs., Inc.*, 514 F.3d 1136, 1153 (10th Cir. 2008).

To prevail on a  wrongful discharge/disparate treatment claim under the ADEA,
Plaintiff must prove by a preponderance of the evidence that her age was the "but-for"
cause of Defendant's actions.  *See Gross v. FBL Financial Servs., Inc.*, --- U.S. ----, ----,
129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009).

In the instant case, because Plaintiff has no direct evidence of discrimination, the
*McDonnell Douglas* burden-shifting framework governs consideration of the evidence
presented on summary judgment.  *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557-

558 (10th Cir.1996) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).[1]

Under the *McDonnell Douglas* framework, Plaintiff bears the burden initially of establishing a *prima facie* case of discrimination.  *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).  In the context of summary judgment, the *McDonnell Douglas* framework requires a plaintiff to raise a genuine issue of material fact on each element of the *prima facie* case. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005).  In order to establish a *prima facie* case of age discrimination Plaintiff must show that she was: (1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person.  *Adamson,* 514 F.3d at 1146.

If Plaintiff establishes a *prima facie* case, there is a presumption that her termination, and Defendant's actions leading up to it, were, in fact, based on her age. The burden of production then shifts under *McDonnell Douglas* to Defendant to rebut this presumption by articulating a facially legitimate, nondiscriminatory reason for its actions.  *Id.*  Once Defendant does so, the presumption would "simply drop out of the

---

[1]  In *Gross*, the Supreme Court stated that it had not "definitively decided" whether the evidentiary framework of *McDonnell Douglas* applies to ADEA cases.  *Gross,* — U.S. —, —, 129 S.Ct. 2343 at n.2.  Until the Supreme Court or the Tenth Circuit holds otherwise, this Court will apply the *McDonnell Douglas* framework to these cases.  *See, e.g., Ferruggia v. Sharp Electronics Corp.*, 2009 WL 2634925, at *3 (D.N.J. Aug. 25, 2009) (unpublished opinion) (noting that the "majority of courts that have addressed this issue post-Gross continue to apply the *McDonnell Douglas* framework at the summary judgment stage.").

picture" and Plaintiff resumes her full initial burden of proving that age discrimination was the "but for" cause of Defendant's actions.  *See id.* (quoting *St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993)*). Under *McDonnell Douglas*, a plaintiff may meet this ultimate burden either by demonstrating that the employer's proffered reasons are pretexts for unlawful discrimination or with any other evidence giving rise to the necessary inference.  *See id.*

If the Plaintiff fails to establish a *prima facie* case of age discrimination, she is not entitled to a presumption that Defendant acted with discriminatory intent.  *See Adamson*, 514 F.3d at 1153 (failure to establish *prima facie* case of sex discrimination entitled defendant to summary judgment under *McDonnell Douglas* framework without reference to defendant's stated reasons for the terminations).

Applying the *McDonnell Douglas* framework, because Plaintiff was 49 years old at the time of her termination, she satisfies elements one (1) and three (3) of the *prima facie* case.  There is a factual dispute concerning element two (2).  Plaintiff argues that her yearly performance appraisals from 2000 through 2006 show that Plaintiff met or exceeded expectations, that both her prior directors stated that she was highly regarded, and that her department was one of the strongest within the organization. Defendant argues that Plaintiff had antisocial behavior problems, and these problems were not dealt with properly by her prior supervisors.  Defendant has sworn statements from hospital employees, including the CFO, two physicians, and several of Plaintiff's coworkers regarding the negative impact that Plaintiff had on them.  The problem for the

Plaintiff is that, even assuming she establishes element three (3), she fails to establish a *prima facie* case of age discrimination because element four (4) is lacking[2].  It is undisputed that Plaintiff was replaced by a woman of her same age.  Therefore, Plaintiff is unable to make out a *prima facie* case of age discrimination.[3]

For these reasons, summary judgment on Plaintiff's ADEA claim is appropriate.

2.      FMLA Claim

According to Plaintiff, this claim is based solely on her March 8, 2007 FMLA request.  Plaintiff admits that her FMLA request was approved, and that she witnessed Armstrong's signing of the form entitled "Medical Certification and Final Determination." Plaintiff also admits that she then took time off to care for her elderly father.

In the context of summary judgment, where Defendant identifies a lack of evidence on an essential element of Plaintiff's claim, Plaintiff is required to raise a genuine issue of material fact on each element of the *prima facie* case.  To establish

---

[2]   Plaintiff focuses her argument on a discussion of pretext.  However, this case never proceeds to the issue of pretext because Plaintiff fails to establish the fourth element of the *prima facie* case.  Thus, Plaintiff's inability to establish a *prima facie* case of age discrimination concludes the *McDonnell Douglas* analysis and prevents the burden from shifting to Defendant to articulate a legitimate, nondiscriminatory reason for her termination.

[3]   Assuming arguendo that Plaintiff is able to establish a *prima facie* case of age discrimination, under *McDonnell Douglas*, the burden of production would then shift to the Defendant to rebut the presumption of age discrimination by articulating a facially legitimate, nondiscriminatory reason for terminating Plaintiff.  In this case, Defendant has a wealth of evidence to suggest that Plaintiff was fired for legitimate, nondiscriminatory reasons, *e.g.* her inappropriate behavior, driving employees away, and causing people to be afraid of her.  Under *McDonnell Douglas*, Plaintiff would then have to prove that age was the but-for factor in her termination.  In this case, Plaintiff has not met the but-for test.   In fact, Plaintiff has not come forward with any evidence that age-based factors motivated the Defendant's termination of her employment.

a *prima facie* case of FMLA interference, a plaintiff must show that: (1) she was entitled to FMLA leave; (2) some adverse action by the employer interfered with the employee's right to take such leave; and (3) the employer's action was related to the exercise or attempted exercise of his or her right. *Jones v. Denver Pub. Sch.,* 427 F.3d 1315, 1318-1319 (10th Cir. 2005).

As stated above, Plaintiff has apparently conceded that this claim has no merit because she failed to address Defendant's contention that it be dismissed. Even if the Court draws all inferences in favor of the Plaintiff, no reasonable jury could find that element two (2) is present. The Defendant did not take any action that interfered with Plaintiff's right to take FMLA leave. Defendant approved Plaintiff's FMLA leave request, and Plaintiff took FMLA leave to care for her elderly father.

For these reasons, summary judgment on Plaintiff's FMLA claim is appropriate.

3.      HIPAA Claim

On October 17, 2007, the U.S. Department of Health and Human Services ("HHS"), Office for Civil Rights ("OCR"), received a complaint from Plaintiff alleging violations of HIPAA. Specifically, Plaintiff alleged that, because she reported violations of HIPAA by a coworker in 2004, she was fired in 2007. The OCR found that the evidence did not establish a valid claim and closed its file on the complaint.

Federal courts, including this district, have unanimously held that HIPAA itself does not create a private right of action. *See Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006) ("While no other circuit court has specifically addressed this issue . . .

[e]very district court that has considered this issue is in agreement that the statute does not support a private right of action.") *See Univ. of Colo. Hosp. Auth. v. Denver Pub. Co.*, 340 F.Supp.2d 1142, 1145 (D. Colo. 2004) (also collecting cases); *Agee v. United States*, 72 Fed. Cl. 284 (2006); *Walker v. Gerald*, 2006 WL 1997635 (E.D.La. June 27, 2006); *Poli v. Mountain Valleys Health Ctrs.*, Inc., 2006 WL 83378 (E.D.Cal. 2006); *Cassidy v. Nicolo*, 2005 WL 3334523 (W.D.N.Y. 2005); *Johnson v. Quander*, 370 F.Supp.2d 79 (D.D.C. 2005); *O'Donnell v. Blue Cross Blue Shield of Wyo.*, 173 F.Supp.2d 1176 (D.Wyo. 2001); *Means v. Ind. Life & Accident Ins. Co* ., 963 F.Supp. 1131 (M.D.Ala. 1997); *Wright v. Combined Ins. Co. of Am.*, 959 F.Supp. 356 (N.D. Miss. 1997); *Taylor v. Morse*, 2008 WL 3822962 (N.D. Cal. 2008); *Logan v. Dept. of Veterans Affairs*, 357 F.Supp.2d 149, 155 (D.D.C. 2004); *Sconiers v. California Dept. of Social Services*, 2008 WL 53231, *4 (E.D. Cal. 2008).

Further, HIPAA expressly provides the penalties for improper disclosures of medical information and limits enforcement to the Secretary of HHS.  *See* 42 U.S.C. §§ 1320d-5 and d-6.  This specific delegation of enforcement to the Secretary of HHS is a strong indication that Congress intended to preclude private enforcement.  *Univ. of Colo. Hosp. Auth.*, 340 F.Supp.2d at 1144-45 (The specific punitive enforcement provision precludes any finding of an intent by Congress to create a private right of action.); *Logan v. Department of Veterans Affairs*, 357 F.Supp.2d 149, 155 (D.D.C. 2004) ("[T]he law specifically indicates that the Secretary of HHS", not a private individual, "shall pursue the action against an alleged offender.").

-14-

In this case, because HIPAA does not make available a private right or cause of action as a means of enforcement, Plaintiff exhausted the only remedy she had related to her allegation of HIPAA violations.  Therefore, Plaintiff has no standing to pursue an alleged violation of the HIPAA protections.  Moreover, as stated above, Plaintiff has apparently conceded that this claim has no merit because she failed to address Defendant's contention that it be dismissed.

For these reasons, summary judgment on Plaintiff's HIPAA claim is appropriate.

## B.    STATE LAW CLAIMS

Dismissal of all the claims supporting federal subject matter jurisdiction gives rise to the question of whether this Court should continue to exercise supplemental jurisdiction over the remaining state law claims.  28 U .S.C. § 1367(c)(3) provides that the Court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."  In determining whether to exercise its discretion to exercise supplemental jurisdiction in these circumstances, the Court must consider the values of judicial economy, convenience, fairness, and comity. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

Turning first to the question of judicial economy, the Court notes that discovery is complete in this action, and the only matters left for judicial involvement are resolution of the summary judgment motion and trial of the case.  Given its familiarity with the facts and issues in this case, this factor tips in favor of the Court's exercising supplemental

jurisdiction.  A remand of the remaining claims to state court would require that court to familiarize itself anew with the factual and legal issues presented before proceeding to trial, resulting in duplication of effort.

The second factor, convenience, is largely neutral.  Neither court is unusually convenient or inconvenient to the parties, who, according to the Complaint, likely reside in Denver and Pueblo Counties.  The Court assumes that, to the extent there are non-party witnesses in this matter, those witnesses likely live in the vicinity of Pueblo County, perhaps making that forum slightly more convenient than this Court, which sits in downtown Denver.  Thus, to the extent the convenience factor adds meaningful weight to the calculus, it weighs very slightly in favor of remand to the state court.

The third factor requires the Court to consider the fairness of retention or remand. If this Court remands the action and does not address the substantive merits of the summary judgment motion – a motion on which the Court is otherwise prepared to rule – both parties would be disadvantaged by the inevitable delay that would almost certainly result from remand.  Thus, this factor tips slightly in favor of this Court retaining the case.

Finally, the Court considers the issue of comity.  Normally, "notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir.1995).  Thus, the "most common response" in these circumstances is to effect a remand.  *Id.*  It is particularly appropriate to remand the case where the state law cause of action is "in a process of current evolution."  *Id.*  Although neither party makes an argument that any of the state

law causes of action are in the process of evolution, this factor still weighs slightly in favor of remand to the state court.

This Court finds that based on these factors, especially judicial economy, it should continue to exercise jurisdiction over the state law claims and address the merits of the summary judgment motion.

1.      Invasion of Privacy Claim

Based on Plaintiff's deposition testimony, the factual basis for this claim is: (1) Defendant required Plaintiff to undergo a fit for duty evaluation, (2) Armstrong, an employee of Defendant's HR Department, told Plaintiff that Krasovec, Defendant's HR Director, had stated she was crazy, (3) Krasovec mentioned in the termination letter that she had undergone a fit for duty evaluation.

Colorado Courts have recognized the existence of three separate "invasion of privacy" torts: (1) unreasonable intrusion upon the seclusion of another (seclusion); (2) unreasonable publicity given to another's private life (disclosure); and (3) appropriation of another's name or likeness (appropriation). *Denver Publishing Co. v. Bueno,* 54 P. 3d 893, 897 (Colo. 2002).

Plaintiff's Amended Complaint does not identify which of the three invasion of privacy torts she is alleging. In Plaintiff's Response to Defendant's Motion for Summary Judgment, however, Plaintiff settles on unreasonable intrusion upon the seclusion of another (seclusion).

In the context of summary judgment, where Defendant identifies a lack of evidence on an essential element of Plaintiff's claim, Plaintiff is required to raise a genuine issue of material fact on each element of the *prima facie* case.  The *prima facie* elements of seclusion are (a) another person has intentionally intruded, physically or otherwise; (b) upon the plaintiff's seclusion or solitude; and (c) such intrusion would be offensive or objectionable to a reasonable person.  *Doe v. High-Tech Institute, Inc.* 972 P.2d 1060, 1065 (Colo. App. 1998).

In this case, Plaintiff does not identify any facts upon which to base a claim of seclusion.  There is no discussion of how the facts fit the elements of this tort.  The Plaintiff simply states that she

> had an expectation of privacy regarding her thoughts and her psycho-
> logical records and information.  Defendant violated her rights to privacy
> when it required her to reveal her thoughts to healthcare providers and
> when Defendant acquired and released this information.  Additionally,
> Defendant falsified or misrepresented the results of the psychological
> records and information.  (Doc. #18 at 4.)

First of all, Plaintiff is not allowed to simply rest on her pleadings to satisfy her burden.  She must set forth specific facts that would be admissible in evidence at trial from which a rational trier of fact could find in her favor.  In Plaintiff's Response to Defendant's Motion For Summary Judgment, she delves into a discussion regarding the "arbitrary and capricious" nature of the fit for duty evaluation.  However, the tort of invasion of seclusion does not involve an analysis regarding whether the defendant acted in an arbitrary and capricious manner.  Rather, the analysis requires the Plaintiff to demonstrate the offensive nature of the invasion, *Id.* at 1065, and Plaintiff has failed to

so demonstrate.  Further, Plaintiff cites no authority to support the contention that an employer unreasonably intrudes upon the seclusion of another when, after receiving complaints from employee's coworkers indicating that they are scared of the employee, the employer requires the employee to undergo an evaluation to see whether or not the employee is psychologically fit for duty.  Furthermore, Krasovec never received any psychological records or information regarding Plaintiff, other than the fact that she passed her fit for duty evaluation.  Therefore, the only information that Krasovec could have revealed about the evaluation was that it was normal.

Second, Plaintiff fails to address the Defendant's affirmative defense of consent. It is undisputed that Plaintiff consented to the fit for duty evaluation and the release of the results.  She signed an "Authorization to Disclose Protected Health Information" form allowing Dr. Tucker to exchange the results of her evaluation with Krasovec.  Consent alone is fatal to Plaintiff's claim.  *Borquez v. Robert C. Ozer, P.C.*, 923 P.2d 166, 175 (Colo.App. 1995), *rev'd on other grounds*, 940 P.2d 371 (Colo. 1997); *See also* Colorado Jury Instructions (Civil) 28:13 Invasion of Privacy - Affirmative Defense - Consent.

For these reasons, summary judgment on Plaintiff's Invasion of Privacy claim is appropriate.

*2.*   Public Policy Claim

According to Plaintiff's deposition testimony, this is a retaliation claim for reporting HIPAA violations in 2004.  In Plaintiff's deposition, she stated:

Q: I see. So based on your HIPAA report in 2004 to Tom Anderson and the things that occurred at that time, you've made this claim for violation of public policy.  Is that accurate?

A: Yes.

(Doc. # 33, Ex. 14 at 70:8-12.)

Defendant argues that this claim must be dismissed pursuant to the statute of limitations for tort actions in Colorado, C.R.S. 13-80-102, because this claim relates to events that occurred in 2004.  However, the Court finds this assertion to be without merit because Plaintiff's claim is that she was terminated in 2007 in retaliation for her reporting a violation in 2004.  Therefore, this claim is not barred by C.R.S. 13-80-102.

However, under Colorado law, a separate public policy wrongful discharge claim is not available where the statute at issue provides a wrongful discharge remedy.  *See, e.g.*, *Miles v. Martin Marietta Corp., 861 F. Supp. 73, 74* (D. Colo. 1994); *Smith v. Colorado Interstate Gas Co.*, 777 F. Supp. 854, 858 (D. Colo. 1991); *Gamble v. Levitz Furniture Co.*, 759 P.2d 761, 766 (Colo. Ct. App. 1988).  Sections 1320-d5 and d-6, 29 U.S.C., under which the Plaintiff filed her retaliatory discharge claim with HHS, provides such a remedy.  Accordingly, the Plaintiff may not base her public policy wrongful discharge claim on alleged retaliation for reporting an alleged HIPAA violation.[4]

For this reason, summary judgment on Plaintiff's Retaliation in Violation of Public Policy claim is appropriate.

---

[4] Moreover, as stated above, Plaintiff has apparently conceded that this claim has no merit because she failed to address Defendant's contention that it be dismissed.

3.      Breach of Contract and Promissory Estoppel Claims

Plaintiff asserts related claims for breach of contract and for promissory estoppel, both grounded in allegations that Defendant violated policies contained in its employee handbook (Centura Associate Principles).  (Doc. # 33, Ex. 14 at 74:24-75:11 and Ex. 18) Specifically, Plaintiff contends that Defendant failed to follow its disciplinary and termination procedures.  The only section of the Centura Associate Principles regarding disciplinary or termination procedures states:

> The action may range from a Performance Improvement Plan to corrective action . . . Disciplinary or corrective action may range from a verbal warning to discharge depending on the circumstances of the situation.  The manager may determine that corrective action is appropriate based on the serious nature of the circumstances or if the Performance Plan was not effective.  Corrective action is not necessarily progressive and may include a verbal warning, written warning, suspension, or discharge.  Please note that either Centura Health or the associate may terminate employment at any time with or without notice or cause.  (Doc. # 33, Ex. 18 at 22.)

Defendants argue that the handbook contained disclaimers indicating that it did not create any sort of binding contract or otherwise alter Plaintiff's basic "at will" employment relationship with the company.

Statements made in an employee handbook - for example, statements limiting the employer's right to discharge its employees - can alter the presumed "at will" status of employees and give rise to a contract-type claim.  *Evenson v. Colo. Farm Bur. Mut. Ins. Co.*, 879 P.2d 402, 408 (Colo.App. 1993).  However, if the handbook expressly disclaims any intent to form a contractual relationship, an implied contract or estoppel claim fails as a matter of law.  This is because "[w]hen an employment manual contains an appropriate

-21-

disclaimer, no implied contract can be formed because the disclaimer precludes the possibility of a manifestation of assent by the employer . . . .  Similarly, a promissory estoppel claim cannot succeed because an effective disclaimer precludes the possibility that any reliance by the employee could be reasonable or justified." *Darr v. Town of Telluride*, Colo., 495 F.3d 1243, 1260 (10th Cir. 2007).  To be sufficient, the disclaimer must be "clear and conspicuous." *See, e.g., Ferrera v. Nielsen*, 799 P.2d 458, 460-61 (Colo.App. 1990) ("Summary judgment denying claims based on a handbook is appropriate if the employer has clearly and conspicuously disclaimed intent to enter a contract . . ."). "Whether a contract disclaimer in a handbook is clear and conspicuous is a question of law." *Fejes v. Gilpin Ventures, Inc.*, 960 F.Supp. 1487, 1495 (D.Colo. 1997).

In this case, Defendant relies on two specific provisions of the handbook which, it contendd, disclaim any contractual intent.  First, the handbook contains the following statement, which Plaintiff signed:

RECEIPT OF CENTURA ASSOCIATE PRINCIPLES

Finally, I understand that the Associate Principles is not intended and should not be construed as a contract, either express or implied, nor should it be construed to provide any guarantee or assurance of employment or employment conditions for any specified period of time, schedule, location, or work hours.  The employment relationship is considered to be "at will." (Doc. # 33, Ex. 10)

The receipt signed by Plaintiff very clearly and conspicuously provides that Plaintiff understood that the handbook was not a contract or any guarantee of employment and that Plaintiff's employment relationship was "at will."

Second, at the beginning of the handbook there is the following statement:

> These principles are intended to be flexible and provide general guidance; therefore they should not be considered a contract either express or implied.  Only the CEO, Executive Vice President, Senior Vice Presidents and Site Administrators have the authority to enter into and "Associate Agreement."  Such an agreement is valid only if in writing and signed by one the above officers and the associate.  No other representative has the authority to make representations, promises, or agreements regarding term or conditions of employment.  (Doc. #33, Ex. 18 at 2)

This provision clearly and conspicuously provides that the principles are not to be considered a contract, and that only certain executives in the company have the authority to bind the company through a written and signed "Associate Agreement."[5]

These disclaimers are in line with the types of disclaimers that Colorado courts have found sufficient to defeat implied contract or promissory estoppel claims.  *See, e.g., Ferrera*, 799 P.2d at 461 (disclaimer on first page of handbook labeled "IMPORTANT" coupled with signed acknowledgment was "clear and conspicuous").

Lastly, as stated above, Plaintiff has apparently conceded that this claim has no merit because she failed to address Defendant's contention that it be dismissed.

For these reasons, summary judgment on Plaintiff's Breach of Contract/Promissory Estoppel claim is appropriate.

---

[5]  It is undisputed that Plaintiff never entered into an "Associate Agreement."

## IV.  CONCLUSION

Based on the foregoing, the Court ORDERS that Defendant's Motion for Summary Judgment (Doc. #33) is GRANTED.  Accordingly, this case is DISMISSED WITH PREJUDICE.

It is further ORDERED that Plaintiff's Motion for Partial Summary Judgment (Doc. # 31), Defendant's Motion to Strike (Doc. # 45), and Plaintiff's Motion to Supplement Motion for Partial Summary Judgment (Doc. # 64) are DENIED AS MOOT.

It is further ORDERED that the Final Trial Preparation Conference currently scheduled for November 20, 2009, and the five-day jury trial set to commence December 7, 2009, are VACATED.

It is further ORDERED that Defendant shall have its costs by the filing of a Bill of Costs with the Clerk of this Court within ten days of the entry of judgment.

DATED:  October   28   , 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge